# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DARRELL REEVES, et al., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 19-CV-570-JED-FHM |
| ENTERPRISE PRODUCTS PARTNERS, LP, | ) ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

The Court has for its consideration two motions to compel arbitration, (Doc. 29; Doc. 36), filed by Defendant Enterprise Products Partners, LP. Although Enterprise moves against Plaintiff Darrell Reeves and Plaintiff James King separately, both motions raise the same issue: whether, and under what circumstances, a party may enforce the arbitration clause of an employment contract to which the party is not a signatory. The Court analyses the issue with respect to both motions below.

## I. BACKGROUND

Plaintiff Darrell Reeves, on behalf of himself and all others similarly situated, brought this suit to recover unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 216(b). (Doc. 1). In his complaint, Reeves alleges that he worked as an inspector for Enterprise from April 2017 until December 2017 and that Enterprise paid him and others a flat daily rate, regardless of the number of hours they worked in a given day or week. Reeves claims that he was subject to the FLSA's overtime mandate and should have been paid accordingly. James King later consented to join the putative collective action and was added as a named plaintiff. (Doc. 31).

Reeves and King appear to have been working for Enterprise through staffing companies— Reeves through a company called Cypress Energy Management-TIR, LLC; King through a

company called Kestrel Field Services, Inc. (*See* Doc. 29-2 at 2–3; Doc. 36-2 at 2). Each signed an employment contract with his respective staffing company, and both contracts provided for mandatory arbitration.

> The Reeves-Cypress "Employment Agreement" provided, in relevant part, as follows:
>
> 2. The Employee understands that employment is based on a specific project to be performed for a designated customer. Any concern or claim arising out of the working relationship must be reported to and addressed directly with Cypress Energy Management-TIR, LLC. The Employee shall not make any complaints, allegations, or take any action against a customer or contact a customer regarding any of the foregoing without first contacting Cypress Energy Management - TIR, LLC and providing Cypress Energy Management-TIR, LLC a reasonable opportunity to resolve the matter. Maintaining a good working relationship with the customer is critical to the company's success and the employee's opportunity for employment.
> . . .
> 5. The parties agree that any dispute, controversy or claim arising out of or related to in any way to the parties' employment relationship or termination of that relationship, including this Employment Agreement or any breach of this agreement, shall be submitted to and decided by binding arbitration in Tulsa, Tulsa County, Oklahoma.
> . . .
> 6. Employee and Employer expressly intend and agree that: (a) class action, collective action and representative action procedures shall not be asserted, nor will they apply, in any arbitration pursuant to this Employment Agreement; (b) each will not assert class action or representative action claims against the other in arbitration or otherwise; and (c) Employee and Employer shall only submit their own, individual claims in arbitration and will not seek to represent the interests of any other person. Further, Employee and Employer expressly intend and agree that any claims by the Employee will not be joined, consolidated or heard together with claims of any other employee.

(Doc. 29-2 at 5–6).

Similarly, the King-Kestrel "Mutual Arbitration Agreement" provided as follows:

> This Mutual Arbitration Agreement ("Agreement") is between me and Kestrel Field Services, Inc., formerly Kestrel Engineering, Inc. ("Company").
> 1. **MUTUAL ARBITRATION AGREEMENT.** The Company and I mutually agree and contract to resolve by arbitration all past, present, or future claims or controversies, including, but not limited to, claims arising out of or related to my application for employment, employment, or termination of my employment that the Company may have against me or I may have against: (i) the Company or its subsidiaries or affiliated entities ("Kestrel Entities"); (ii) Kestrel Entities

officers, directors, employees, or agents in their capacity as such or otherwise; (iii) Kestrel Entities' benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates, and agents, and/or (iii) all of their successors and assigns. **All disputes covered by this Agreement will be decided by an arbitrator through individual arbitration, not by way of court or jury trial.**

(Doc. 36-2 at 5). Neither agreement mentioned Enterprise by name.

Although neither Cypress nor Kestrel have been joined as parties to this action, and although Enterprise was not a signatory to either of the employment contracts, Enterprise argues that Reeves and King should be forced to arbitrate their claims against it.

## II. LEGAL STANDARD

The Federal Arbitration Act evinces a liberal policy in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Notwithstanding this strong federal policy, however, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 648 (1986) (internal quotation marks omitted). The party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement and the opposing party's failure, neglect, or refusal to arbitrate. *BOSC, Inc. v. Bd. of Cty. Comm'rs of Cty. of Bernalillo*, 853 F.3d 1165, 1177 (10th Cir. 2017).

The scope of the agreement, including the question of who it binds, is a question of state contract law. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009). Accordingly, the task for a district court under these circumstances is to determine whether the relevant state's high court would permit the nonsignatory to enforce the arbitration clause. *See Pollard v. ETS PC, Inc.*, 186 F. Supp. 3d 1166, 1173 (D. Colo. 2016). If the state's high court has not explicitly decided the issue, the district court must "attempt to predict what the state's highest court would do." *Id.* In doing so, the district should seek guidance from decisions rendered by lower courts in the relevant

state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of applicable authority. *Id.* (citing *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 666 (10th Cir. 2007)).

## III. ANALYSIS

Traditional principles of state contract law may permit a contract to be enforced by or against nonsignatories through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver or estoppel. *Arthur Andersen*, 556 U.S at 631. Here, Enterprise does not explicitly state the theory on which it claims to have standing to enforce the arbitration provisions in the plaintiffs' contracts. Given the evidence before the Court, only third-party-beneficiary status and equitable estoppel could plausibly apply.

### A. Third-Party-Beneficiary Status

Under Oklahoma law,[1] Enterprise does not qualify as a third-party beneficiary to either the Reeves-Cypress agreement or the King-Kestrel agreement. By statute, a third party may enforce a contract that has been made "expressly for [the third party's] benefit." Okla. Stat. tit. 15, § 29. The contract need not name the third party, provided the benefit is "expressly" directed to the third party. *Hensley v. State Farm Fire & Cas. Co.*, 398 P.3d 11, 19 (Okla. 2017); *Keel v. Titan Constr. Corp.*, 639 P.2d 1228, 1231 (Okla. 1981). Expressly, means "in an express manner; in direct or unmistakeable terms; explicitly; definitely; directly." *Hensley*, 398 P.3d at 19. The governing principle is whether the terms of the contract show a clear intent by the signatories to confer a legally enforceable benefit on a third party. *Keel*, 639 P.2d at 1231.

Here, both the Reeves-Cypress agreement and the King-Kestrel agreement cast a wide net regarding the types of claims that must be arbitrated, but neither agreement addresses its arbitration

---

[1] The parties cite case law from a variety of jurisdictions, but they appear to agree that Oklahoma law governs.

provision to claims against company clients.[2] Because the contract does not show in "unmistakeable terms" that the parties intended Enterprise to benefit from the arbitration provision, the company has no standing to enforce it as a third-party beneficiary.

### B. Equitable Estoppel

Enterprise, advancing a theory of equitable estoppel adopted by some jurisdictions, argues that the plaintiffs should be required to arbitrate their claims against it because its conduct is "intertwined" with the staffing companies. (Doc. 29 at 3) (citing *Cinocca v. Orcrist*, 60 P.3d 1072, 1075 (Okla. Civ. App. 2002)). This line of defense is unavailing for several reasons.

First, the Oklahoma Supreme Court has never adopted this theory of Equitable Estoppel. Second, although the Oklahoma Court of Civil Appeals has endorsed the theory in a pair of nonprecedential opinions,[3] the rule applied in those cases would not lead to equitable estoppel here. Third, to the extent other jurisdictions that have compelled litigation on behalf of

---

[2] At first blush, the Reeves-Cypress agreement may seem to cover Enterprise, as the contract stipulates that "employment is based on a specific project to be performed for a designated customer," and provides that "[a]ny concern or claim arising out of the working relationship must be reported to and address directly with Cypress Energy Management-TIR, LLC." (Doc. 29-2 at 5). That language, however, is several paragraphs away from the arbitration clause, which stipulates that "[t]he *parties* agree" to arbitrate disputes "arising out of or related to in any way to the *parties*' employment relationship . . . ." (*Id.* at 6) (emphasis added). Given that the contract contemplates employee-customer disputes but does not address them in the arbitration paragraphs, it is reasonable to infer that the parties did not intend to mandate arbitration of those disputes. Moreover, the provision limiting class actions, which also addresses arbitration, describes an agreement between the "Employee and Employer" and stipulates that "*each* will not assert class action or representative action claims *against the other* in arbitration or otherwise." (*Id.*) (emphasis added). Viewed as a whole, the contract evinces no intent by the parties to make Cypress's customers beneficiaries of the arbitration provision. Under Oklahoma law, third-party-beneficiary status is available only where the terms of the contract make the intent of the parties clear. *See Keel*, 639 P.2d at 1231.

[3] Decisions of the Oklahoma Court of Appeals are persuasive, not precedential, unless approved for publication by the Oklahoma Supreme Court. *See* Okla. Sup. Ct. R. 1.200(d)(2) (codified at Okla. Stat. tit. 12, ch. 15, app. 1, Rule 1.200(d)(2)); Okla. Stat. tit. 20, §§ 30.5, 30.14. The relevant cases, discussed *infra*, were not approved for publication.

nonsignatory defendants in FLSA cases, they have done so under circumstances not present in this case.

The brand of equitable estoppel advanced by Enterprise developed as federal common law before *Arthur Andersen* made clear that state law governs who may be bound by an arbitration clause. *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 F. App'x 704, 708 & n.2 (10th Cir. 2011). In *MS Dealer Service Corp. v. Franlin*, an oft-cited Eleventh Circuit case, the court described two circumstances in which equitable estoppel will allow a nonsignatory to compel arbitration. *See* 177 F.3d 942, 947 (11th Cir. 1999). The first applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the agreement in asserting its claims against the nonsignatory. *Id*. When each of a signatory's claims against a nonsignatory reference or presume the existence of the written agreement, the signatory's claims "arise out of and relate directly to the written agreement," and the plaintiff may be required to arbitrate them. *Id.* (alterations omitted) (quoting *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993).

In the second set of circumstances described by the Eleventh Circuit, equitable estoppel will be warranted when a signatory to the arbitration agreement "raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Id.* (alterations omitted) (quoting *Boyd v. Homes of Legend, Inc.*, 981 F. Supp. 1423, 1433 (M.D. Ala. 1997)). In either case, the determination turns on the nature of the plaintiff's claims. *Id.*

The Oklahoma Supreme Court has never explicitly rejected the Eleventh Circuit's equitable estoppel theory, but it has yet to adopt it, even in cases where it might have done so. On the contrary, where the argument has been made in the context of an arbitration agreement, the

court has applied a traditional theory of equitable estoppel. *See Williams v. TAMKO Bldg. Prod., Inc.*, 451 P.3d 146 (Okla. 2019); *Carter v. Schuster*, 227 P.3d 149 (Okla. 2009). In *Williams*, homeowners sued a shingle manufacturer whose product their contractors had used in the construction of a new roof. *Williams*, 452 P.3d at 149–50. The manufacturer attempted to enforce an arbitration clause included in the product's warranty, arguing that equitable estoppel permitted it to enforce the arbitration clause even though the contractors, not the homeowners, were the contracting party. The court rejected this argument, holding that equitable estoppel required:

> 1) a false representation or concealment of facts; 2) made with actual or constructive knowledge of facts; 3) to a person without knowledge of, or the means of knowing, those facts; 4) with the intent that it be acted upon; and 5) the person to whom it was made acted in reliance upon it to his detriment.

*Williams*, 451 P.3d at 153–54. Applying the rule, the court held that the homeowners were not estopped from challenging the arbitration agreement because they had made no false representation nor tried to conceal facts from the defendant. *Id.* at 154.

Under this formulation of equitable estoppel, Reeves and King would not be bound by their arbitration agreements because Enterprise has produced no evidence that it detrimentally relied on false statements made by the plaintiffs. Still, *Williams* is not dispositive evidence that the Oklahoma Supreme Court would reject the Eleventh Circuit's view of equitable estoppel in this case. In *Williams*, it was a *signatory* attempting to enforce arbitration against a *nonsignatory*. Here, a nonsignatory (Enterprise) seeks to bind the signatories (Reeves and King). Nevertheless, it is noteworthy that the *Williams* court restated the traditional rule for equitable estoppel rather than adopt the Eleventh Circuit's approach, which turns on the plaintiffs claims and their relationship to the contract containing the arbitration agreement.

Because the Oklahoma Supreme Court has not addressed the issue, it is appropriate to consider opinions issued by the Oklahoma Court of Civil Appeals, which has twice relied on the

7

Eleventh Circuit's conception of equitable estoppel to compel arbitration. In *Cinocca v. Orcrist, Inc.*, a contract attorney sued her former boss and his law firm's technology contractor after they accessed her personal computer and deleted some of its data pursuant to a separation agreement that required the attorney to return any proprietary data or software on her machine.[4] 60 P.3d 1072, 1072 (Okla. Civ. App. 2002). The contract attorney conceded that some proprietary data was stored on her machine but claimed that the defendants exceeded the scope of their authority by accessing the computer outside of her presence and deleting material without her approval. Although the contract attorney eventually dismissed the claims against her boss, the only defendant who was a signatory to the separation agreement, the technology contractor moved to enforce the agreement's arbitration provision. The trial court overruled the contractor's motion, but the Oklahoma Court of Civil Appeals reversed, holding that equitable estoppel compelled the associate to arbitrate her claims against the firm's contractor. *Id.* at 1074.

In reaching its decision, the court noted that the contract attorney was required under the separation agreement to turn over information stored on her computer; she just objected to the manner in which the defendants had enforced that duty. *Id.* Consequently, the court reasoned that her claims were within the scope of the arbitration agreement because they related to the "rights and obligations arising under the [separation] Agreement." *Id.* Next, the court examined whether equitable estoppel should operate to prevent the contract attorney from litigating her claims against the technology contractor. In doing so, the court noted that the plaintiff's claims alleged that her boss and the technology contractor had conspired together in improperly accessing her computer. *Id.* at 1074–75. As such, the claims against the signatory and nonsignatory were so "intertwined"

---

[4] The opinion is unclear as to what position her boss held with the firm, but the circumstances suggest he was a partner or some other person with authority to bind the firm as an entity.

as to be "inherently inseparable." *Id.* at 1075. Citing the Eleventh Circuit's opinion in *Franklin*, the court held that the associate's claims against the technology contractor were subject to equitable estoppel because she had "raise[d] allegations of substantially interdependent and concerted misconduct by both the nonsignatory and another signatory." *Id.* at 1074.

In *High Sierra Energy, LP v. Hull*, the Court of Civil Appeals again applied equitable estoppel to compel the signatory of an arbitration agreement to arbitrate claims against a nonsignatory. 259 P.3d 902 (Okla. Civ. App. 2011). There, an energy company executed a purchase agreement to buy several energy-services businesses but later sued several individuals whom the plaintiff had retained as managers, alleging that they had exploited their positions in the plaintiff's business for the benefit of rival companies, whom the plaintiff had joined as defendants. *Id.* at 903–05. Of the defendants, only one was a signatory to the purchase agreement, which included an arbitration clause. Reviewing the trial court's refusal to compel arbitration of the claims against the nonsignatories, the Court of Civil Appeals reversed.

As it had done in *Cinnoca*, the court looked to the nature of the plaintiff's claims to determine their relationship to the agreement and the conduct of the signatories. The court noted that the claims alleged "a concerted and premeditated plan" between the signatories and nonsignatories and that all the plaintiff's claims rested upon the benefits the plaintiff expected to receive from the purchase agreement. *Id.* at 905–08. Because the plaintiff's claims alleged "substantially interdependent and concerted misconduct" by the signatory and the nonsignatory defendants, the claims were "inherently inseparable" and therefore subject to the arbitration provision. *Id.* at 909.

Although *Cinnoca* and *High Sierra* endorse the Eleventh Circuit's theory of equitable estoppel, this case involves materially different facts. First, in *Cinnoca* and *High Sierra*, the

9

plaintiffs' claims turned, at least in part, on the substantive provisions of the contract that included the arbitration agreement. In *Cinnoca*, the plaintiff's claims related to the "rights and duties" arising out of the plaintiff's separation agreement. Similarly, in *High Sierra*, the plaintiff's claims rested on the benefits it had expected to receive under the purchase agreement. Here, the plaintiffs claim that Enterprise was an employer within the meaning of the FLSA, and that Enterprise misclassified them as independent contractors, thereby depriving them of mandatory overtime wages. Nothing in these claims relate to the substantive rights and duties arising from the plaintiffs' employment agreements with Cypress and Kestrel.

Second, in *Cinnoca* and *High Sierra*, the plaintiffs' claims alleged that the nonsignatory defendants acted in concert with the signatory defendants. Here, the plaintiffs allege no "substantially interdependent and concerted misconduct" between Enterprise and the staffing companies; the allegations are against Enterprise alone. To succeed at trial, the plaintiffs would have to establish: (1) an employer-employee relationship existed with Enterprise during the unpaid overtime periods claimed; (2) he engaged in activities within the coverage of the FLSA; (3) Enterprise violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due. *See Tabb v. Mentor Prot. Serv. LLC*, 2018 WL 3213622, at *2 (W.D. Okla. June 29, 2018). None of these elements requires the plaintiffs to prove any misconduct on the part of Cypress.

Enterprise argues that claims against one "joint employer" are inseparable from the conduct of the other employer. (Doc. 29 at 1, 3). Reeves, however, has not alleged Enterprise to be a "joint employer," (*see* Doc. 1), and Enterprise, in its answer to Reeves's complaint, has denied being his employer at all, (Doc. 10 at ¶¶ 9, 23).[5] Moreover, even if Enterprise and the staffing companies

---

5    Given Enterprise's denial of employer status, the company's bid to shelter under the arbitration agreement of a supposed "joint employer" is arguably a more intuitive fit for the application of equitable estoppel. *See Williams*, 451 P.3d at 153 ("Estoppel prevents one party

were "joint employers," Enterprise has not explained why joint employer status, in and of itself, would entitle Enterprise to enforce the arbitration agreements. Equitable estoppel, as articulated by the Oklahoma Court of Civil Appeals, requires a showing that the plaintiff's claims raise allegations "substantially interdependent and concerted misconduct." *Cinnoca*, 60 P.3d 1074. Here, the plaintiffs allege no misconduct on the part of the staffing companies, and Enterprise offers no authority suggesting that they would have to prove any such conduct in order to sustain their claims against Enterprise.

In an effort to bolster its assertion that joint-employer status alone entitles it to compel arbitration, Enterprise cites several FLSA cases in other jurisdictions where a nonsignatory joint-employer was able to enforce an arbitration agreement. (*see* Doc. 29 at 2–3). Each of these cases, however, conforms with the rule articulated by the Eleventh Circuit and adopted by the Oklahoma Court of Civil Appeals. In the cited cases, the nonsignatory employers were alleged to have controlled the signatory employer or worked in concert with it to violate the plaintiffs' rights under the FLSA. Put another way, the plaintiffs alleged "substantially interdependent and concerted misconduct."

In *Arnold v. DirectTV, Inc.*, the plaintiffs themselves alleged that the defendant was a joint employer with the staffing companies and controlled their employment decisions. 2013 WL 6159456, at *3 (E.D. Mo. Nov. 25, 2013). In *Pollard v. ETS PC, Inc.*, the signatory was also a defendant, and the nonsignatory defendants operated together with it as a single "indistinguishable entity," according to the plaintiffs. 186 F. Supp. 3d 1166, 1169–70 (D. Colo. 2016). Moreover, the plaintifs attributed the misconduct to "Defendants" collectively. *Id.* at 1175. Likewise, in *Ortiz v.*

---

from taking a position that is inconsistent with an earlier action that places the other party at a disadvantage.").

11

*Volt Mgmt. Corp.*, the plaintiff the plaintiff sued both the staffing company and the nonsignatory, attributing the misconduct to the "defendants" generically. 2017 WL 2404977, at *2 (N.D. Cal. June 2, 2017). In *Bonner v. Michigan Logistics Inc.*, the plaintiffs, who were delivery drivers, sued a pair of logistics companies, only one of which had a contract with the drivers, and one of companies for whom the drivers delivered packages. 250 F. Supp. 3d 388, 391–92 (D. Ariz. 2017). Nevertheless, the plaintiffs alleged that all the defendants formed a unified operation, had common management, and operated as a "single employer." *Id.* at 392. In *Farfan v. SSC Carmichael Operating Co. LP*, the plaintiffs alleged that all the defendants were "sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a signle entity . . . ." 2019 WL 415577, at *5 (N.D. Cal. Feb. 1, 2019). The plaintiffs' claims against each defendant were identical. *Id.* at *5. In *Van Curan v. Great Falls Ins. Co.*, a discrimination case, the plaintiff alleged that the signatory defendants and the nonsignatory defendants formed "a single, integrated enterprise with respect to [the plaintiff's] employment." 2012 WL 3115160, at *1 (2012).

In short, the plaintiffs in each of these cases alleged the kind of "substantially interdependent and concerted misconduct" that the Eleventh Circuit and the Oklahoma Court of Civil Appeals have held to support the application of equitable estoppel. Here, on the other hand, the plaintiffs have not alleged that Enterprise controlled or otherwise worked hand-in-glove with the staffing companies. Given that the Oklahoma Supreme Court has never adopted the "concerted misconduct" brand of equitable estoppel, which would not appear to apply in this case anyway, the Court concludes that the plaintiffs are not equitably estopped from pursuing their claims against Enterprise in court rather than at the arbitrator's table.

**IV.     Conclusion**

For the reasons stated above, the Court finds that the plaintiffs' claims against Defendant Enterprise Products Partners, LP, are not subject to mandatory arbitration. Accordingly, Defendant's motions to compel arbitration, (Doc. 29; Doc. 36), are hereby **denied**.

SO ORDERED this 10th day of February, 2020.

JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT